175 F.3d 1169
 99 Cal. Daily Op. Serv. 3942, 1999 Daily
Journal D.A.R. 5021
Noni ONOSSIAN; Cyril Onossian; Herve Onossian, Plaintiffs-Appellants,
v.
Sherman BLOCK; Michael Antonovich; Deane Dana; Ed
Edelman; Kenneth Hahn; Gloria Molina; County of Los
Angeles; Daniel Finn; Larry Yates; Bruce Thomas, & One
Hundred Unknown Named Employees & or Officials of County of
Los Angeles, Defendants-Appellees.
 No. 97-56169.
 United States Court of Appeals,
Ninth Circuit.
 Submitted April 12, 1999.[1]
Filed May 26, 1999.
 
 Marion R. Yagman and Stephen Yagman, Yagman & Yagman, Venice, California, for the plaintiffs-appellants.
 Roger H. Granbo, Deputy County Counsel, Los Angeles, California, for the defendants-appellees.
 Appeal from the United States District Court for the Central District of California; Robert M. Takasugi, District Judge, Presiding. D.C. No. CV-92-04816-RMT.
 Before: D.W. NELSON, FERNANDEZ, and FLETCHER, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 On the evening of August 17, 1991, Scott Reed passed defendant Los Angeles County Sheriff's deputies Finn and Yates in his hardtop Oldsmobile "muscle car," moving in and out of traffic at about 60 miles per hour on busy Santa Monica Boulevard in Los Angeles. Finn and Yates followed Reed, who continued to drive erratically and recklessly. Finn, who was driving the patrol car, turned on his siren and lights, and gave chase. Rather than stopping, Reed attempted to elude Finn and Yates, maintaining speeds of up to 60 or 70 miles an hour.
 
 
 2
 Defendant deputy Thomas, who was monitoring the chase on his patrol car radio, saw Reed's Oldsmobile run a red light on Melrose Avenue. Finn and Yates had not been able to keep up with Reed, so Thomas took up the pursuit. Three or four seconds later, Reed crashed into the Onossians' vehicle. The entire pursuit lasted about a minute. The deputies' speeds in the two patrol cars never exceeded 45 miles per hour. The closest either car came to Reed's car was a distance of 100 yards.[2]
 
 
 3
 The Onossians were severely injured. They sued Finn, Yates, Thomas, and various Los Angeles County officials under 42 U.S.C. § 1983, seeking damages for violation of their Fourteenth Amendment due process rights.[3] The district court granted defendants' motion for summary judgment, using this court's then-standard for high speed chases set forth in Lewis v. Sacramento County, 98 F.3d 434 (9th Cir.1996). Before we heard the Onossians' appeal, the United States Supreme Court reversed our decision in Lewis v. Sacramento County. County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).
 
 
 4
 The Supreme Court held in Lewis that when injury or death results from a high-speed police chase "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." Lewis, 523 U.S. at ----, 118 S.Ct. at 1711-12. "[W]e hold that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." Id., 523 U.S. at ----, 118 S.Ct. at 1720.
 
 
 5
 We must decide two questions in this case. First, does the Lewis test apply not only to harm caused to those pursued in a high speed chase, but also to harm caused to other drivers? In Lewis itself, two boys on a motorcycle were pursued by a police patrol car, and one of the boys was accidently killed. The words of the Lewis holding, read narrowly, apply only to suspects pursued by the police. For example, in the language quoted above, the Court referred to harm to "suspects" rather than harm to people generally. Similarly, the justification for the Lewis test, understood narrowly, might also apply only to suspects. That is, Lewis establishes a high threshold that must be overcome before someone injured in a police chase can show a due process violation. It might be contended that the duty of police toward innocent people is greater than to fleeing suspects, so that another driver or an innocent bystander should be able to recover from the police upon a lesser showing of recklessness or misconduct than that required by Lewis' "shock-the-conscience" test.
 
 
 6
 We find that such a narrow interpretation does not fully capture the meaning of Lewis. At several points in the Court's opinion, the duty of the pursuing police officer is defined generally, without specific reference to the suspect being pursued. Perhaps most telling is the Court's description of the dilemma of a police officer who must make a "split-second" decision whether to pursue a suspect: "A police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to everyone within stopping range, be they suspects, their passengers, other drivers, or bystanders." Id., 523 U.S. at ----, 118 S.Ct. at 1720 (emphasis added). As we read the Court's opinion, if a police officer is justified in giving chase, that justification insulates the officer from constitutional attack, irrespective of who might be harmed or killed as a consequence of the chase.
 
 
 7
 We have already come close to answering the question of a police officer's obligation to non-suspects in a high speed chase. In Moreland v. Las Vegas Metropolitan Police Dept., 159 F.3d 365 (9th Cir.1998), we held that the Lewis test applied where a bystander was killed by police in a gunfight outside a bar:
 
 
 8
 The question we face today is whether this newly minted explanation of the 'shocks the conscience' standard also controls in cases where it is alleged that an officer inadvertently harmed a bystander while responding to a situation in which the officer was required to act quickly to prevent an individual from threatening the lives of others. We conclude that it does.
 
 
 9
 159 F.3d at 372. It is a small step from applying Lewis to a bystander harmed in a gunfight to applying it to another driver harmed in the very situation in which the Lewis test originated. We therefore hold that for the Onossians to show that their due process rights have been violated, they must show that the behavior of the police in this case "shocks the conscience."
 
 
 10
 Second, does the conduct in this case "shock the conscience" within the meaning of Lewis? A comparison of the chases in this case and in Lewis compels the conclusion that the Onossians' due process rights were not violated. Plaintiffs in Lewis were the parents of a boy who was killed in a high-speed police chase. Their minor son had been a passenger on a motorcycle driven by another minor. A Sacramento County Sheriff's deputy pursued the boys at high speed after they failed to stop when asked to do so by another officer. The chase, which lasted a little over a minute, reached speeds of up to 100 miles an hour on residential streets. The motorcycle ran several stop lights and made various dangerous turns. The deputy followed closely, sometimes at a distance of as little as 100-150 feet. The chase ended when the motorcycle skidded to a halt over the crest of a hill. The deputy came over the hill, saw the stopped motorcycle, and skidded 147 feet before hitting the boy at a speed of approximately 40 miles per hour. He was thrown 70 feet down the road and was pronounced dead at the scene. The Supreme Court held in Lewis that the deputy's behavior did not "shock the conscience." Lewis, 523 U.S. at ----, 118 S.Ct. at 1721.
 
 
 11
 Comparing the facts in this case to those in Lewis, it is clear that no reasonable trier of fact could find that defendants' actions shock the conscience. There is no evidence that deputies Finn, Yates, and Thomas intended to cause harm to anyone. Indeed, their actions support precisely the opposite conclusion, for they were attempting to remove a dangerous driver from the streets. Especially convincing is the fact that Reed was endangering the public even before the chase began. It is possible, perhaps even likely, that Reed would have collided with the Onossians or someone else, whether or not the police had been chasing him.
 
 
 12
 Appellees request attorneys' fees under 42 U.S.C. § 1988, contending that the Onossians' appeal is frivolous, but they have failed to file a separate motion. Because a mere statement in the brief that the party seeks sanctions is not sufficient, we do not consider appellees' request for sanctions and fees. Fed. R.App. P. 38.
 
 
 13
 The decision of the district court is AFFIRMED.
 
 
 
 [1]
 The panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)
 
 
 [2]
 Reed was subsequently convicted in state court of reckless driving causing great bodily injury and sentenced to two years in prison
 
 
 [3]
 This case has a somewhat complicated procedural history. The original complaint, filed on August 12, 1992, also alleged violations of their Fourth Amendment rights. The district court dismissed the entire complaint on November 24, 1992, granting defendants' Federal Rule of Civil Procedure 12(b)(6) motion without leave to amend. Plaintiffs appealed to this court, which reversed the dismissal of the Fourteenth Amendment claims and affirmed the dismissal of the Fourth Amendment claims. Plaintiffs amended their complaint, and the district court once again dismissed it without leave to amend under Rule 12(b)(6). This court again reversed, based on our now-reversed decision in Lewis v. Sacramento County, 98 F.3d 434 (9th Cir.1996). This case is before us for the third time